IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SINA MOGHTADER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:17-cv-01216-FB |
| | § | |
| NATIONAL BOARD OF MEDICAL | § | |
| EXAMINERS, | § | |
| | § | |
| Defendant. | § | |

**NATIONAL BOARD OF MEDICAL EXAMINERS' MOTION TO DISMISS
AND POINTS AND AUTHORITIES IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the National Board of Medical Examiners ("NBME") respectfully moves to dismiss the Complaint of Plaintiff Sina Moghtader. This is Mr. Moghtader's second lawsuit against NBME.  The Court dismissed his first lawsuit in 2015.  The same result is warranted here.  The Court lacks subject matter jurisdiction over his claims, and he has failed to state a viable claim in any event.

## INTRODUCTION

NBME develops and provides for the administration of the United States Medical Licensing Examination ("USMLE"), which is a multi-step standardized examination that state licensing authorities rely upon in evaluating whether an applicant possesses the minimum level of medical knowledge necessary for licensure.  The USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care.

Mr. Moghtader attended Ross University School of Medicine, on the Caribbean island of Dominica.  He would like to become a licensed physician in the United States.  To do so, he must pass the USMLE.  He took the USMLE Step 1 exam in 2011, under standard testing

conditions, and achieved a passing score.  He has also taken, but not passed, the USMLE Step 2 Clinical Knowledge (Step 2 CK) exam and the Step 2 Clinical Skills (Step 2 CS) exam.   This lawsuit relates to Mr. Moghtader's inability to achieve passing scores on those exams.

On multiple occasions (most recently, in 2016), Mr. Moghtader requested additional testing time and other accommodations for the Step 2 exams.  He claims that accommodations are warranted because he has been diagnosed as having an Attention-Deficit/Hyperactivity Disorder ("ADHD") and learning disorders.  NBME has denied Mr. Moghtader's requests for testing accommodations.  It did so because his supporting documentation did not establish that he is disabled within the meaning of the Americans with Disabilities Act ("ADA").

This lawsuit, like his first lawsuit, alleges that NBME violated the ADA by not granting his requests for testing accommodations on the Step 2 exams.  His first lawsuit was filed in June 2015 and asserted claims against his medical school, NBME, and other defendants relating to his dismissal from medical school after he failed to achieve passing scores on the Step 2 exams.  *See Moghtader v. Nat'l Bd. of Med. Exam'rs*, No. 5:15-cv-00508-FB (W.D. Tex.) ("*Moghtader I*"). Mr. Moghtader alleged that NBME violated the ADA, Section 504 of the Rehabilitation Act, and the U.S. Constitution in denying him testing accommodations on the Step 2 exams. *See id.*, Complaint at ¶¶ 35-53 (ECF No. 1).  The Court dismissed his Complaint for failure to state a claim.  *See id.*, Memorandum and Recommendation at 9-13 (Oct. 1, 2015) (ECF No. 14), Order Accepting Memorandum and Recommendation of the United States Magistrate Judge (Oct. 28, 2015) (ECF No. 16), *and* Judgment (Oct. 28, 2015) (ECF No. 17).

Mr. Moghtader filed the present action in November 2017.  This time, he has sued only NBME, and his only substantive claim is an ADA claim.  His first count seeks injunctive relief based upon an alleged violation of 42 U.S.C. § 12189, which requires private testing

organizations to administer their tests in "an accessible place and manner" when they test individuals who are disabled.  *See* Complaint at ¶¶ 15-41.  His second count is not actually a separate cause of action, as it seeks an award of attorneys' fees under the ADA.  *Id.* at ¶¶ 42-43.[1]

For reasons that follow, Mr. Moghtader's latest Complaint should also be dismissed.

## BACKGROUND

I.   **NBME and the USMLE**

NBME is a not-for-profit organization located in Pennsylvania.  Complaint ¶ 3.  Together with the Federation of State Medical Boards, NBME sponsors the USMLE.

The USMLE is comprised of four "Steps."  The Step 1 exam assesses understanding and application of basic science concepts important to the practice of medicine.  *See* www.usmle.org/step-1/.  The Step 2 Clinical Knowledge (CK) exam assesses the application of medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision.  *See* www.usmle.org/step-2-ck/.  The Step 2 Clinical Skills (CS) exam utilizes trained actors as standardized patients and assesses whether examinees can effectively gather information from patients, perform physical examinations, and communicate findings to patients and colleagues.  *See* www.usmle.org/step-2-cs/.  The Step 3 exam assesses whether examinees can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine, with emphasis on patient management in ambulatory settings.  *See* www.usmle.org/step-3/.

Testing accommodations are available on the USMLE for disabled test takers.  *See* www.usmle.org/test-accommodations/.  All accommodation requests are individually reviewed

---

[1] Mr. Moghtader's Complaint also asks the Court to award damages.  *See* Complaint at p. 8, ¶ B.  His claim, however, arises under Title III of the ADA, and damages may not be awarded under Title III.  *See* *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 701 (W.D. Tex. 2010).

by NBME, and reasonable accommodations are provided as warranted to individuals who demonstrate that they are disabled within the meaning of the ADA:

> [NBME's] procedures are designed to ensure that individuals with *bona fide* disabilities receive accommodations, and that those without disability do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination. As administrator of the national exam used by a number of states for licensing medical doctors, the National Board has a duty to ensure that its examination is fairly administered to all those taking it.

*Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 88-89 (2d Cir. 2004).

## II.    Mr. Moghtader

Mr. Moghtader attended the Ross University School of Medicine, Complaint ¶ 1, which is a medical school in the Caribbean (https://medical.rossu.edu/).  Students at Ross "are required to take and pass the [USMLE] Step 2 Exams" in order to "be granted the M.D. degree and move on to attend medical residency." *Id*., ¶ 9.  Mr. Moghtader, however, was "unable to achieve a passing score on Step 2" and therefore "was dismissed from the university."  *Id*., ¶ 7.

According to Mr. Moghtader, he was not able to achieve a passing score because NBME "illegally refused to accommodate [his] learning disability by refusing to provide [him] additional [testing] time" on the Step 2 exams.  *Id*., ¶¶ 1, 7.  Mr. Moghtader claims to suffer from "learning disabilities" that "substantially limit his major life activities of reading and learning as compared to most people of similar educational background."  *Id*., ¶¶ 8, 13; *see also id*., ¶¶ 21, 23 ("This learning disability substantially limits his activity of reading and learning, in comparison to most people of similar education and training … taking the Step 2 Exams.").  Mr. Moghtader, however, passed the Step 1 exam without needing or receiving any accommodations.  *See Moghtader I*, Complaint ¶ 21 (ECF No. 1).

NBME denied Mr. Moghtader's initial request for accommodations on the Step 2 exams "on July 5, 2012."  *See Moghtader I*, Complaint, ¶ 20.  He submitted a renewed request in 2014,

which NBME denied in a letter dated September 9, 2014.  *See* Declaration of Catherine Farmer at ¶ 16 (filed herewith).  He asked NBME to reconsider its denial in April 2015.  In a letter dated April 28, 2015, NBME informed Mr. Moghtader that it could not review that request until he completed his registration for the Step 2 exam(s).  *See id*. at ¶ 20.

To be eligible to register to take the Step 2 exams, a person must be enrolled in or a graduate of medical school.  *See* www.usmle.org/bulletin/eligibility/  On April 30, 2015, Ross University School of Medicine allegedly "changed its practice" of allowing students to remain in school while seeking testing accommodations on the USMLE and "dismissed Plaintiff from the medical school."  *Moghtader I*, Complaint at ¶¶ 27, 28.  Mr. Moghtader apparently reenrolled in medical school, however, and registered to retake the Step 2 exams in February 2016.  Also in February 2016, he submitted a new request for accommodations on the Step 2 CS and Step 2 CK exams.  Farmer Decl. ¶ 21.  His request form stated that he would be graduating from medical school in 2016, and he identified three alleged impairments in support of his accommodation request:  ADHD, "Specific Learning Disorder with impairment in Reading," and "Specific Learning Disorder with impairment in written expression."  *Id.*, Ex. 4 at 2, 4.  As accommodations on the Step 2 CK exam, he requested (1) 100% additional testing time (double testing time), and (2) additional break time over 2 days.  On the Step 2 CS exam, he requested (1) double testing time, (2) use of speech-to-text software, and (3) permission to use his asthma inhaler and take medicine that he takes for gastritis.  *Id*., Ex. 4 at 3.

In a letter dated May 16, 2016, NBME again denied Mr. Moghtader's request for accommodations (but advised him to consult the personal item exception process for his inhaler and medication).  Farmer Decl. ¶ 24, Ex. 5.  It did so after receiving an updated report and

recommendation from an external professional with expertise in the impairments that Mr. Moghtader had identified on his accommodation request form. *Id*. at ¶¶ 22-24.

Mr. Moghtader filed the present action on November 27, 2017, more than 18 months after receiving NBME's denial letter. *See* Complaint (ECF No. 1). He did not properly serve the Complaint until May 22, 2018, six months after filing suit. *See* Proof of Service (ECF No. 11).[2]

To be eligible to take the USMLE Step 2 examinations (and thus eligible to receive accommodations on a Step 2 exam), a candidate must be in one of the following categories at the time he applies to test and on the day of his examination: (1) a medical student officially enrolled in, or a graduate of, a U.S. or Canadian medical school program leading to the MD degree that is accredited by the Liaison Committee on Medical Education; (2) a medical student

---

[2] Under Fed. R. Civ. P. 4(m), Mr. Moghtader had 90 days to serve his Complaint on NBME. He missed the deadline, prompting the Court to enter an order on May 7, 2018, that he show cause why his Complaint "should not be dismissed pursuant to Rule 4(m) and for failure to prosecute." Order to Show Cause at 2 (ECF No. 8). Plaintiff responded as follows: "Plaintiff filed this Complaint on November 27, 2017…. On February 13, 2018, plaintiff sent defendant a copy of the Complaint and a Waiver of the Service of Summons…. On May 4, 2018, counsel recognized that the defendant did not sign a waiver and requested the clerk of the court to issue a summons…. On May 4, 2018, counsel received the summons and forwarded it to a private process server…. The delay in service is counsel's fault…." [Plaintiff's] Motion Showing Cause at 1 (ECF No. 9). Based upon this response, the Court extended the 90-day service period in an Order Setting Deadline for Proper Service, entered on May 23, 2018. *See* ECF No. 10. In doing so, the Court appears to have concluded that the reason that Mr. Moghtader gave for not serving NBME in a timely manner -- it was his "counsel's fault," *see* ECF No. 9 -- constituted "good cause" under Fed. R. Civ. P 4(m) to extend the service period.

NBME recognizes that a court has broad discretion to grant such an extension, and that a finding of good cause is not essential. A showing of good cause is generally required, however, and a mistake by a party's lawyer generally does not constitute "good cause" for extending the service period. *See, e.g., Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) ("'When service of process is challenged, the serving party bears the burden of proving ... good cause for failure to effect timely service.' Proof of good cause requires 'at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.' Additionally, some 'showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required.'") (citations omitted).

Given the absence of good cause in this case for the tardy service, it would be reasonable for the Court to reconsider its decision to extend the time for Mr. Moghtader to serve NBME, and to dismiss the Complaint on this additional basis.

officially enrolled in, or a graduate of, a U.S. medical school leading to the DO degree that is accredited by the American Osteopathic Association; or (3) a medical student officially enrolled in, or a graduate of, a medical school that is outside the U.S. and Canada and listed in the World Directory of Medical Schools, who meets the eligibility criteria of the Educational Commission for Foreign Medical Graduates. *See* www.usmle.org/bulletin/eligibility/.

Ross University School of Medicine subsequently dismissed Mr. Moghtader and he is not currently enrolled in medical school.  Complaint, ¶ 12.  As a result, he is not eligible to register (and is not registered) to take either of the Step 2 exams.  *Id*.  He has no request for accommodations pending with NBME.  Farmer Decl. ¶ 25.

## ARGUMENT

I.     **Plaintiff's Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1).**

This Court's powers under Article III of the United States Constitution are limited to adjudicating actual cases or controversies.  *Honig v. Doe*, 484 U.S. 305, 317 (1988).  "In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing[,] ripeness, mootness, and the political question doctrine."  *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

Mr. Moghtader seeks prospective injunctive relief that would direct NBME to provide Mr. Moghtader with his "requested accommodation with regard to the Step 2 Exams and future Step Exams for which Moghtader is otherwise entitled to sit and for which he otherwise makes proper application."  Complaint, ¶ 41 (ECF No. 1).  He also makes a passing request for damages, *id.* at p. 8, ¶ B, but he is suing under Title III of the ADA, and prospective injunctive relief is the only relief available under Title III.  The remedies provision for Title III is found at

42 U.S.C. § 12188(a), which adopts the remedies set forth in 42 U.S.C. § 2000a-3(a).  Section 2000a-3(a) allows individuals to pursue "a civil action for **preventive relief**, including an application for a permanent or temporary injunction, restraining order, or other order …." (emphasis added); *see also Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015) ("Damages are not available for a Title III ADA claim brought by a private party, but a private party may seek injunctive relief.").

Mr. Moghtader cannot pursue an ADA claim relating to his requests for accommodations on past administrations of the USMLE Step 2 exams because injunctive relief would not prevent the harm he allegedly experienced with respect to prior test administrations.  And his claims are not ripe with respect to any future administrations of the Step 2 exams because he is not registered to take either Step 2 exam, he is not currently eligible to take either Step 2 exam (as he is not enrolled in medical school), and he has no pending request for accommodations on any future Step 2 exam.

In light of the above, the Court lacks subject matter jurisdiction over Mr. Moghtader's Title III ADA claims.  *See Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 916-18 (10th Cir. 2013) (holding that district court lacked subject matter jurisdiction over plaintiff's Title III ADA complaint against NBME, because plaintiff did "not currently have any pending [accommodation] requests before the Board" and his claim "was not ripe for review"); *Doe v. Law School Admission Council*, No. 16-3261, 2017 WL 4742475, at *3 (E.D. Pa. Oct. 20, 2017) (dismissing ADA claims brought by individual who was denied accommodations on the LSAT exam, pursuant to Rule 12(b)(1), and stating, "Notably, nowhere in the complaint does Plaintiff allege that she is registered for a future administration of the LSAT or, more pertinently, that she requested accommodations for a future LSAT administration and that her request was denied.

Rather, she alleges only events that have occurred in the past; i.e., that she applied and was denied accommodations for the June 2015 examination."); *Kober v. Nat'l Bd. of Med. Exam'rs*, No. 09-1772, 2010 WL 2342480, at *2-3 (W.D. La. June 7, 2010) (dismissing Title III ADA complaint pursuant to Rule 12(b)(1) where plaintiff "currently has no request pending before the NBME" for decision); *cf. Higgins v. Texas Dep't of Health Servs.*, 801 F. Supp. 2d 541, 548-54 (W.D. Tex. 2011) (dismissing claims under Rule 12(b)(1) for lack of jurisdiction where plaintiffs' claims were moot as to past alleged injuries and speculative as to future alleged injuries and thus not ripe).

## II.     Plaintiff's Claims Should Also Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) for Failure to State a Claim.

Like the Complaint he filed in 2015, Mr. Moghtader's current Complaint states in conclusory terms that he is disabled under the ADA.  *See* Complaint ¶¶ 1, 7, 13, 21, 23. Although he has added references to the "major life activities" that are purportedly "substantially limited" by his alleged impairments, as before, he "fails to state how he is substantially limited in any major life activity."  *See Moghtader I*, Memorandum & Recommendation at 10 (ECF 14). He has again "done no more than provide a formalistic recitation of the elements of a cause of action," which is "fatal to stating a valid claim for relief."  *Id*.

The more fundamental problem with his allegations, however, is that he relies upon the wrong comparison group in claiming to be disabled.  Mr. Moghtader claims to suffer from "learning disabilities" that "substantially limit his major life activities of reading and learning as ***compared to most people of similar educational background*.**"  *Id*., ¶¶ 8, 13 (emphasis added); see *also id*., ¶¶ 21, 23 ("This learning disability substantially limits his activity of reading and learning, ***in comparison to most people of similar education and training … taking the Step 2 Exams*.**") (emphasis added).  Those allegations do not state a claim under the ADA.

The ADA provision relied upon by Mr. Moghtader provides in relevant part as follows:

Any person that offers examinations or courses relating to applications, licensing, certifications, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative arrangements for such individuals.

42 U.S.C. § 12189.  Pursuant to Section 12189, persons who qualify as disabled under the ADA are entitled to reasonable testing accommodations.

Having a diagnosed impairment is not the same thing as being disabled within the meaning of the ADA.  To be disabled under the ADA, a person must have a "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1), "as compared to most people in the general population."  28 C.F.R. § 36.105(d)(1)(v).  If a diagnosis is unwarranted, or if an impairment does not result in substantial limitations relative to the applicable comparison group, the individual is not disabled under the ADA and is not entitled to accommodations.  *See, e.g., Mann v. Louisiana High Sch. Athletic Ass'n*, 535 F. App'x 405, 410-11 (5th Cir. 2013) (holding that a doctor's diagnosis of anxiety disorder alone does not establish disability within meaning of ADA).

As noted above, Mr. Moghtader's Complaint alleges that he is substantially limited compared to "most people of similar education and training" who take the USMLE Step 2 exams.  His claimed limitations, however, must be measured against most people in the general population, not against other college graduates, other medical students, or other individuals who take a high-stakes professional licensing examination.  *See Singh v. George Wash. Univ.*, 508 F.3d 1097, 1103-04 (D.C. Cir. 2007); *Black v. Nat'l Bd. of Med. Exam'rs*, 281 F. Supp. 3d 1247, 1249-50 (M.D. Fla. 2017) ("Although Black insists that the Board must compare Black's performance to her 'medical-school peers,' under 28 C.F.R. § 36.105(d)(1)(v) the substantial-

limitation determination depends on a person's performance in comparison to 'most people in the general population.'"); *Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs*, No. 15-4987, 2016 WL 1404157, at *6 (E.D. Pa. Apr. 11, 2016) (noting that it is "[i]nappropriate under the ADA to compare an individual to her academic peer group or, in the case of standardized tests, other test-takers who are not representative of the general population," and finding that plaintiff was not disabled within the meaning of the ADA, notwithstanding her dyslexia diagnosis, and therefore was not entitled to extra testing time on a medical licensing exam).[3]

Mr. Moghtader's Complaint does not allege that he is substantially limited in any major life activity as compared to most people in the general population.  He has therefore failed to state a viable ADA claim, because he has not alleged facts sufficient to show that he is disabled within the meaning of the ADA.  *See, e.g., Fierro v. Knight Transp.*, No. 12–CV–00218–DCG, 2012 WL 4321304, at *3 (W.D. Tex. Sept. 18, 2012) (dismissing ADA failure-to-accommodate claim pursuant to Rule 12(b)(6) where plaintiff alleged that he had cancer, but did not "allege facts supporting an inference that he has a 'disability' within the meaning of the Act").

## CONCLUSION

Mr. Moghtader's Complaint should be dismissed with prejudice.

---

[3] *See also Bach v. Law Sch. Adm. Council,* 2014 U.S. Dist. LEXIS 124632, at *5 (M.D.N.C. 2014) (examinee with ADHD diagnosis needed to be compared "to the general population") (preliminary injunction denied); *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636, 651 (E.D. Pa. 2013) (comparison group is "the general population"), *aff'd*, 582 F. App'x 114 (3d Cir. 2014) (judgment for defendant); *Rumbin v. Ass'n of Am. Med. Colleges*, 803 F. Supp. 2d 83, 93 (D. Conn. 2011) ("The relevant comparison is not with other test-takers or future doctors, but rather, with members of the general population.") (judgment for defendant); *Love v. Law Sch. Adm. Council*, 513 F. Supp. 2d 206, 226 (E.D. Pa. 2007) (plaintiff with LD and ADHD diagnoses not disabled under the ADA and thus not entitled to testing accommodations).

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

*/s/ Stephen J. Romero*

    Stephen J. Romero
    State Bar No.  24046756
    stephen.romero@nortonrosefulbright.com
300 Convent Street, Suite 2100
San Antonio, TX  78205-3792
Telephone:     (210) 224-5575
Facsimile:     (210) 270-7205

Counsel for Defendant
National Board of Medical Examiners

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of June 2018, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Vincent E. Nowak
1301 Daws Drive
Amarillo, TX  79124

*/s/  Stephen J. Romero*
Stephen J. Romero

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SINA MOGHTADER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 5:17-cv-01216-FB |
| NATIONAL BOARD OF MEDICAL | § | |
| EXAMINERS, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## DECLARATION OF CATHERINE FARMER, PSY.D.

Catherine Farmer hereby deposes and states:

1.      I am employed by the National Board of Medical Examiners ("NBME") as Director, Disability Services and ADA Compliance Officer, Testing Programs.  My duties include, among other things, operational responsibility for the office that receives and processes requests for test accommodations for the United States Medical Licensing Examination™ ("USMLE").

2.      The NBME is a private non-profit corporation.  Together with the Federation of State Medical Boards of the United States, Inc. ("FSMB"), another non-profit corporation, the NBME has established the USMLE.  The USMLE assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that constitute the basis of safe and effective patient care.

3.      The mission of the NBME is to protect the health of the public by providing a common, consistent, state-of-the-art system of assessment for health professionals.

4.      Students and graduates of medical schools located in the United States, as well as

foreign medical school students and graduates who want to become licensed to practice in the United States, must pass all steps of the USMLE.

5.     The NBME's Office of Disability Services is responsible for implementing the USMLE's policy of providing test accommodations to individuals with disabilities under the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADA"). Upon receipt and review of an examinee's request for test accommodations and submission of supporting documentation, the NBME generally consults with outside professionals with expertise in the assessment, diagnosis, treatment and accommodation of the claimed disability to assist in determining whether the applicant has shown that he or she has a mental or physical impairment that substantially limits the applicant's ability to perform one or more major life activities and, if so, what test accommodations are appropriate to ensure equal access to the USMLE.

6.     As Director of the Office of Disability Services, I am familiar with Sina Moghtader's requests for testing accommodations on the USMLE.

7.     Mr. Moghtader first requested accommodations from the NBME on November 22, 2010, for Step 1 of the USMLE based on learning disorders in reading and written expression.

8.     NBME sent Mr. Moghtader's file to a highly credentialed external expert for review.

9.     The external expert concluded that Mr. Moghtader's documentation did not support a finding that he has a learning disability.

10.    Following our receipt of this external reviewer's recommendation, I sent a letter to Mr. Moghtader on February 17, 2011, denying his request for accommodations on Step 1 of the USMLE.  A true and correct copy of this denial letter is attached hereto as Exhibit 1.  Mr.

Moghtader took the Step 1 examination without any accommodations and passed on his first attempt.

11.     On April 24, 2012, NBME received a request from Mr. Moghtader for extra time on the USMLE Step 2 Clinical Knowledge (CK) and the Step 2 Clinical Skills (CS) exams, based on his assertion that he has an Attention-Deficit/Hyperactivity Disorder (ADHD) and learning disorders in reading and written expression.

12.     In response to Mr. Moghtader's request for accommodations on Step 2 CK and Step 2 CS, NBME submitted his entire file to another external professional for review.  Like the first external expert, this professional concluded that Mr. Moghtader's supporting documentation did not establish that he has any disability that substantially limits his functioning in a manner that is relevant to taking an examination like the Step examinations.

13.     Following our receipt of this external reviewer's recommendation, I sent a letter to Mr. Moghtader on July 5, 2012, denying his request for accommodations on Step 2 CK and Step 2 CS.  A true and correct copy of this denial letter is attached hereto as Exhibit 2.

14.     Mr. Moghtader took the Step 2 CK exam on June 3, 2013, without accommodations.  He did not achieve a passing score.

15.     Mr. Moghtader took the Step 2 CS exam on November 15, 2013, without accommodations.  He did not achieve a passing score.

16.     On June 16, 2014, NBME received another request from Mr. Moghtader for testing accommodations on Step 2 CK and Step 2 CS, again based on his assertion that he has ADHD and learning disorders in reading and written expression.  NBME again sent Mr. Moghtader's complete file to the second expert evaluator, who again reviewed all of the

materials submitted by Mr. Moghtader and again concluded that Mr. Moghtader had not documented any disability that warranted his requested accommodations.

17.     Following our receipt of the external reviewer's recommendation, I issued a denial letter to Mr. Moghtader on September 9, 2014.  A true and correct copy of this denial letter is attached hereto as Exhibit 3.

18.     On April 10, 2015, an attorney representing Mr. Moghtader submitted a letter to NBME regarding Mr. Moghtader's request for accommodations on Step 2 CK and Step 2 CS, which NBME had denied on September 9, 2014.  Mr. Moghtader's attorney included a new psychological report in support of Mr. Moghtader's request for accommodations.

19.     On April 21, 2015, Mr. Moghtader submitted a USMLE Request for Test Accommodations for 100% additional time on Step 2 CK and 100% additional time and "use of software" for the patient note section of Step 2 CS.

20.     By letter dated April 28, 2015, NBME informed Mr. Moghtader that, according to its records, his Step 2 CS registration was terminated on or about April 14, 2015, and, as of that date, he was not registered for either Step 2 CK or Step 2 CS.  NBME further explained to Mr. Moghtader that it was informed by the Education Commission for Foreign Medical Graduates (ECFMG) (an organization that is independent of the NBME) that Mr. Moghtader had submitted a registration for Step 2 CS and Step 2 CK, which was then-pending, awaiting verification by his medical school.  NBME's letter informed Mr. Moghtader that NBME would commence review of his latest request for testing accommodations as soon as his exam registrations were complete.

21.     On February 17, 2016, NBME received another request from Mr. Moghtader for testing accommodations on Step 2 CK and Step 2 CS, again based on his assertion that he has

ADHD and learning disorders in reading and written expression. A true and correct copy of Mr. Moghtader's request form from February 2016 is attached hereto as Exhibit 4.

22.   NBME again sent Mr. Moghtader's complete file to an external professional with expertise Mr. Moghtader's referenced impairments. This professional reviewed the materials submitted by Mr. Moghtader and concluded that Mr. Moghtader had not documented any disability that warranted his requested accommodations.

23.   On May 12, 2016, a different attorney representing Mr. Moghtader submitted a letter to NBME regarding Mr. Moghtader's request for accommodations on Step 2 CK and Step 2 CS. The attorney attached three letters in support of Mr. Moghtader's request for accommodations. Two were from psychologists who had previously evaluated Mr. Moghtader and whose evaluations had already been submitted to and considered by NBME. The third was from a teacher at Mr. Moghtader's high school. The letters did not provide any new substantive information.

24.   After receiving the latest external reviewer's recommendation and considering all of the relevant information, I issued a denial letter to Mr. Moghtader on May 16, 2016. A true and correct copy of this denial letter is attached hereto as Exhibit 5.

25.   Mr. Moghtader has not submitted any requests for accommodations for any Step examinations since his 2016 request.

26.   Mr. Moghtader is not currently registered to take any Step examinations. A candidate must be registered to take the applicable Step examination to request accommodations on that examination.

I declare under penalty of perjury that the foregoing is true and correct.   Executed on June 7 , 2018.

Catherine Farmer, Psy.D.

# Exhibit 1



1052861    0-805-749-9
Denial-Decision Letter (a

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

February 17, 2011

**CONFIDENTIAL**

Sina Moghtader
7911 Sierra Seco
San Antonio, TX 78240

RE: USMLE Step 1                  USMLE ID#: 0-805-749-9

Dear Mr. Moghtader:

We have thoroughly reviewed your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 1 and accompanying material in accordance with USMLE guidelines for examinees with disabilities. Your request was reviewed within the framework of the Americans with Disabilities Act (ADA) as amended by the ADA Amendments Act of 2008 (together, "ADA"). We consulted an expert in disorders of learning to assist us in reviewing the documentation.

In your request you report being diagnosed in 1990 with a reading disability and writing disability. In your personal statement, you report, *"Ever since an early age, my teachers noticed that I had a severe stuttering problem. I also had difficulty processing information especially in comprehension of written language. Specifically, there is a delay in my processing ability in that although I can read at a normal speed, comprehension of the given text took longer than normal."*

In a May 2005 report of Psychoeducational Evaluation conducted when you were was 22-year-old college graduate, Thomas Gaines, Ph.D. reports that your first language is Farsi and you have spoken English since the age of thirteen. Dr. Gaines concludes, *"According to DSM-IV diagnostic criteria, Mr. Moghtader exhibits a significant impairment in his reading and spelling skills in relation to his overall intelligence, and therefore would be considered to have a Reading Disorder (315.00) and Disorder of Written Expression (315.2)."*

The most current clinical documentation provided was an April 2008 Psychological Report in which Russel Thompson, Ph.D. reports *"Mr. Moghtader's family emigrated [sic] to San Antonio, TX from Iran about 20 years ago. He learned English around age 13."* Your evaluator assigns an Axis II diagnosis of Learning Disability for Reading and Spelling, but provides no diagnostic code consistent with the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition Text Revision (DSM-IV-TR)*. According to Dr. Thompson's 2008 report, your Reading Comprehension was better than 84% of a national sample of same age peers. Nevertheless, he concludes, *"Deficits were found in written language and spelling. To a lesser extent, reading ability is also lower than expected."*

According to the *DSM-IV-TR*, learning disorders must be differentiated from other conditions, normal variations in academic attainment, lack of opportunity, poor teaching, language or socio-cultural factors. By definition, for there to be a learning disability, the information, data, and especially test scores cannot be due to external causes such as experiential, cultural, or linguistic factors.

Despite the fact that your first language is not English, you were twice administered a test battery where your performances were compared to normative samples consisting of individuals whose language, culture, and early educational experiences were quite different from your own, and you were labeled as disabled, at least in part, based upon your performances on those tests.  It appears that your evaluators failed to give sufficient attention to noncognitive factors, such as early language development and educational experiences, as contributing to the difficulties that you report or confounding the test scores they obtained. Knowledge of the alphabet, phonemes, counting, and the like become automatic over time as fluency in reading and writing develop further. When an individual does not receive sufficient formal instruction, exposure and opportunity to over-learn these skills, they do not become automatic.

Standards of practice for assessing culturally and linguistically diverse individuals include obtaining a thorough history of language development and cultural context as well as understanding their relevance to the assessment process for the purpose of interpreting scores and developing a differential diagnosis. Difficulties in the automatic aspects of language, such as reading and writing fluency, are not unexpected for someone with your profile of language development when compared to monolingual English speakers of the same age in the general population.  A failure to account for and integrate such variables into the diagnostic formulation of inferences drawn from test data can lead to misinterpretation and misdiagnosis of disorder when none exists.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA.  A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA covers individuals who are substantially limited in a major life activity.  Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Despite the difficulties that you report, your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people, or that additional testing time is an appropriate modification of your Step 1 test administration.  Therefore, after a thorough review of the documentation you have submitted, I must inform you that we are unable to provide you with the requested accommodations.

We will request processing of your exam application without test accommodations.  You may inquire at permits@ecfmg.org or call Applicant Information Services at (215) 386-5900 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

# Exhibit 2



1062726   0-805-749-9
denial-Decision Letter (a

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

**CONFIDENTIAL**

July 5, 2012

215-590-9500 phone
www.nbme.org

**VIA CERTIFIED MAIL**
Sina Moghtader
7911 Sierra Seco
San Antonio, TX 78240

RE: USMLE Step 2 CK and Step 2 CS          USMLE ID#: 0-805-749-9

Dear Mr. Moghtader:

We have thoroughly reviewed your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS) and accompanying material in accordance with USMLE guidelines for examinees with disabilities. Your request was reviewed within the framework of the Americans with Disabilities Act (ADA) as amended by the ADA Amendments Act of 2008 (together, "ADA"). We consulted an expert in disorders of learning and Attention-Deficit/Hyperactivity Disorder (ADHD) to assist us in reviewing the documentation.

Received with your request was an undated letter addressed to whom it may concern in which you report receiving additional time for exams in medical school. You write, *"I am asking for extended time because of my disabilities because without it, I will not be able to perform in [sic] the same level than other students."*

In his January 20, 2012 letter, Jeremy Gilbreath states, *"Sina's ADHD, Dyslexia, and other latent learning disabilities work, in the cumulative, to have an even greater effect on his ability to read and write. While theses [sic] impairments substantially limit reading and writing independently, it is their aggregated and cumulative effect that is perhaps most relevant."*

Received with Mr. Gilbreath's letter were documents labeled Exhibits A through H, most of which were previously reviewed as part of your request for test accommodations for Step 1, including your high school academic transcript and standardized test scores (Exhibit A); a May 31, 2005 report of Psychoeducational Evaluation conducted by Thomas Gaines, Ph.D. (Exhibit B); an April 30, 2008 report of Psychological evaluation conducted by Russel Thompson, Ph.D. (Exhibit C); copy of my February 17, 2011 letter to you regarding your request for test accommodations for Step 1 (Exhibit D); a November 10, 2010 American Diagnostic Imaging report (Exhibit E). Two new documents provided for review include an October, 31, 2011 letter addressed to Mr. Francisco Canseco from Gundlapalli Surya, M.D. (Exhibit F); a September 22, 2011 letter addressed to whom it may concern from Russel Thompson, Ph.D. (Exhibit G); and an updated Certification of Prior Test Accommodations signed February 24, 2012 by Tim Donnelly (Exhibit H).

In his October 31, 2011 letter to Congressman Canseco, Dr. Surya assigns you the diagnosis of Attention Deficit Hyperactivity Disorder, apparently based upon your responses to an ADHD rating scale. He does not provide any historical information or describe which or how many of the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR)* criteria for ADHD you currently meet. He writes, *"In my professional opinion, he would benefit from compensatory time to do his optional [sic] performance especially during the time of examination."*

In his September 22, 2011 letter addressed to whom it may concern, Russel Thompson, Ph.D. offers a response to my February 17, 2011 letter regarding your request for accommodations for Step 1. He writes that you attended high school in Texas for three years and passed most of your classes, except for very difficult AP classes taken in senior year. He notes, *"There is no record of a diagnosis of learning disability or ADHD in High School."* Dr. Thompson refers to a June 16, 2011 letter from Dr. Surya describing a prior imaging study and notes that Dr. Surya assigned you

a diagnosis of ADHD.  Though we were not provided a June 16, 2011 letter from Dr. Surya, the content described by Dr. Thompson sounds very similar to Dr. Surya's October 13, 2011 letter to Congressman Canseco, including the semantic error regarding "optional performance" which I presume Dr. Surya meant optimal performance.

It is unclear from his September 22, 2011 letter when Dr. Thompson last examined you or if he conducted additional assessment subsequent to his 2008 evaluation.  However, Dr. Thompson now (2011) assigns you an Axis I diagnosis of 314.00 Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type and Axis II diagnoses of 315.2 Disorder of Written Expression and 315.00 Reading Disorder. No new data or objective information was provided in support of his revised diagnostic formulation.

Like learning disorders, ADHD is a developmental disorder with a childhood onset.  Even if not diagnosed in childhood, ADHD typically results in a chronic and pervasive pattern of functional impairment in academic, social, vocational, or daily adaptive functioning.  Your documentation does not demonstrate a record of chronic and pervasive problems with inattention, impulsivity, behavioral regulation, or distractibility that impaired your functioning during your development or currently.  Furthermore, neither psychological evaluation conducted by Dr. Gaines in 2005 and by Dr. Thompson in 2008 reported a history of attention or concentration problems or resulted in a diagnosis of ADHD.

ADHD affects people over time and across situations, not in one circumscribed area such as timed test taking or in a demanding academic setting such as medical school.  It must be documented beyond self-report that such symptoms have consistently and pervasively disrupted functioning in multiple behavioral domains.  The current impact of the disorder needs to be evident in real world functioning and result in clinically significant impairment in at least two settings.  No objective data or documentation was provided via formal faculty/supervisor feedback, job performance evaluations, or through other sources of information verifying that you have shown pervasive problems managing daily demands for attention, organization or executive functioning. Our records show that you successfully completed Step 1 under standard conditions.  This does not demonstrate impaired functioning that limits a major life activity or that the standard administration of Step 2CK is insufficient for you needs.

Regarding your request for additional time for the patient encounter and patient note on Step 2 CS, the documentation provided to date does not show that your functioning is impaired within the context of the clinical setting or on tasks relevant to the Step 2 CS examination.  No objective records or data documenting impairment and demonstrating the consistent need for and use of accommodations in the clinical setting were provided for our review.  In a *Certification of Prior Test Accommodations* signed February 24, 2012 (Exhibit H), Tim Donnelly reports that Ross University does not provide you accommodations for clinical skills examinations or classroom and clinical coursework.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances.  The ADA covers individuals who are substantially limited in a major life activity.  Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.
Your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people or that additional testing time is an appropriate modification of your Step 2 CK and Step 2 CS test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

We will request processing of your exam application without test accommodations.  You may inquire at permits@ecfmg.org or call Applicant Information Services at (215) 386-5900 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

C: Jeremy Gilbreath, Esq.

# Exhibit 3



1081143        0-805-749-9
denial-Decision Letter (a

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org



**Confidential**

September 9, 2014

Sina Moghtader
7911 Sierra Seco
San Antonio, TX 78240

RE: USMLE Step 2 CK and Step 2 CS                 USMLE ID#: 0-805-749-9

Dear Mr. Moghtader:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS). We conducted an individualized review of your request in accordance with the guidelines set forth in the Americans with Disabilities Act (ADA).

You report the basis of your request to be learning disorders in in reading and writing (dyslexia) and Attention-Deficit/Hyperactivity Disorder (ADHD) diagnosed in 1990. A personal statement was not provided with your current request. Received were three documents written in Persian and there certified translation into English including a September 21, 2013 letter in which Mohammad Javad Alishahi, M.D. certifies that you were diagnosed with ADHD when you were a student in elementary school and you received "medical programs" of drug therapy, family therapy and educational assistance for learning disabilities until you left Iran; an October 5, 2013 letter in which Dr. Maleki certifies that you were under his/her treatment from 1990-1993 due to ADHD and behavioral disorders; and a May 5, 1990 letter addressed to your parents from the Principal of Feyzieh Elementary School informing them that you were a bit behind your classmates in writing and reading and urging a psychiatric examination and necessary measures be taken to prevent educational failure.

In addition, we received copies of documentation previously submitted and reviewed including but not limited to your Texas Academic Achievement Record from Alamo Heights High School; a May 31, 2005 Psychoeducational Evaluation conducted by Thomas Gaines, Ph.D. assigning diagnoses of Reading Disorder and Disorder of Written Expression; an April 30, 2008 report of Psychological Evaluation conducted by Russel Thompson, Ph.D. assigning a diagnosis of Learning Disability for Reading and Spelling; a September 22, 2011 letter from Russel Thompson, Ph.D. assigning the diagnoses of Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type, Disorder of Written Expression, and Reading Disorder; and an October 31, 2011 letter addressed to Francisco Canseco from G. Surya, M.D. assigning you the diagnosis of Attention Deficit Hyperactivity Disorder (ADHD), and learning disability mixed by history.

Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA. The ADA covers individuals who are substantially limited in a major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Requests for test accommodations are thoroughly reviewed on an individual, case-by-case basis. NBME carefully considers all evidence in determining whether an individual is substantially limited within the meaning of the ADA including the individual's personal statements; objective information such as school records and scores obtained on high stakes tests taken with and without accommodations; and evaluation reports and testimonials by treatment providers.

Supporting documentation submitted from qualified professional(s) is a necessary part of any request for accommodations and is carefully reviewed by the NBME. Though not required to defer to the conclusions or recommendations of an applicant's supporting professional, we carefully consider the recommendation of qualified professionals made in accordance with generally accepted diagnostic criteria and supported by reasonable documentation.

Our thorough review of all of the documentation your have submitted to date found no new substantive information or evidence that alters our original decision described in my letters of February 17, 2011 and July 5, 2012.  Your documentation does not demonstrate that you are currently substantially limited in a major life activity as compared to most people or that additional time is an appropriate modification of your Step 2 CK and Step 2 CS test administration.  Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations.

Our records show that your Step 2 CS scheduling permit was made available to you on May 6, 2014 and that you have already scheduled your standard time exam for November 3, 2014. We will request processing of your Step 2 CK exam application without test accommodations.  You may inquire at permits@ecfmg.org or call Applicant Information Services at (215) 386-5900 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

# Exhibit 4



1097062   0-805-749-9
Step 2 CK & CS-Multi Step

**United States Medical Licensing Examination™ (USMLE®)**

RECEIVED

FEB 1 7 2016

Disability Services

### REQUEST FOR TEST ACCOMMODATIONS

*Use this form if you are requesting accommodations on USMLE for the first time*

---

### The National Board of Medical Examiners® (NBME®) processes requests for test accommodations on behalf of the USMLE program

If you have a documented disability covered under the Americans with Disabilities Act (ADA), you must notify the USMLE in writing **each time** you apply for a Step examination for which you require test accommodations. Submitting this form constitutes your official notification.

• Review the USMLE Guidelines for Test Accommodations at www.usmle.org for a detailed description of how to document a need for accommodation.

• Complete all sections of this request form and submit it together with all required documentation at the same time you submit your Step exam application.

• Incomplete, illegible, or unsigned request forms and/or insufficient supporting documentation will delay processing of your request.

• Do not send originals. Please retain the originals of all documentation that you submit as we are unable to return submissions or provide duplicate copies to third parties.

• Submitting duplicate and/or bound documentation may delay processing of your request.

• NBME will acknowledge receipt of your request by e-mail and audit your submission for completeness. If you do not receive an e-mail acknowledgement within a few days of submitting your request, please contact Disability Services at 215-590-9700.  You may be asked to submit additional documentation to complete your request.

• Requests are processed in the order in which they are received. Allow at least 60 days for processing of your request.  Processing cannot begin until sufficient information is received by NBME and your Step exam registration is complete.

• The outcome of our review will not be released via telephone.  All official communications regarding your request will be made in writing.  If you wish to modify or withdraw a request for test accommodations, contact Disability Services by e-mail at disabilityservices@nbme.org or by telephone at 215-590-9700.

---

### You MUST provide supporting documentation verifying your current functional impairment.

In order to document your need for accommodation, **submit** the following with this form:

✓ A **personal statement** describing your disability and its impact on your daily life and educational functioning.

✓ **Supporting documentation** such as psychoeducational evaluations; medical records; copies of report cards, academic and score transcripts; faculty or supervisor feedback; job performance evaluations; clerkship/clinical course evaluations; verification of prior academic/test accommodations; etc.

✓ A **complete and comprehensive evaluation**.  Reports from qualified professionals must be typewritten on letterhead, signed and include the professional's qualifications.

## Section A: Exam Information

Place a check next to the examination(s) for which you are currently registered and requesting test accommodations: (Check all that apply)

❑ Step 1

☑ Step 2 CK (Clinical Knowledge)

☑ Step 2 CS (Clinical Skills)

❑ Step 3

## Section B: Biographical Information
**Please type or print.**

**B1.** Name: _Moghtader_ _Sina_

Last            First            Middle Initial

**B2.** Gender: ☑ Male    ❑ Female

**B3.** Date of Birth: _____

**B4.** USMLE # _0_ - _8_ _0_ _5_ - _7_ _4_ _9_ - _9_ (required)

**B5.** Address:

_7911 Sierra Seco_

Street

_SAN ANtoNio_          _Tx_          _78240_

City                          State/Province         Zip/Postal Code

_USA_

Country

_210-367-0770_

Daytime Telephone Number

Alternate Telephone Number

_Sina.moghtador@gmail.com._

E-mail address

**B6.** Medical School Name: _Ross School of Medicine_

Country of Medical School: _Dominica_        Date of Medical School Graduation: _2016_

**USMLE® Request for Test Accommodations**

## Section C: Accommodations Information

**C1.**  Do you require wheelchair access at the examination facility? ❑ Yes  ❑ No
If yes, and you require an adjustable height computer table, indicate the number of inches required from
the bottom of the table to the floor: _____

**C2.**  Describe the accommodation(s) you are requesting. Accommodations must be appropriate to the
impairment within the context of the examination task and setting:

*as for CK I need my ASthma inhaler , 100% more Time for exam , And my ADHD med, and gastritis med.*

**C3.**  Check **ONLY ONE** box for the exam(s) for which you are registered.

### STEP 1:

**Additional Break Time**
❑ Additional break time over 1 day
❑ Additional break time over 2 days

**Additional Testing Time**
❑ 25% Additional test time (Time and 1/4) over 2 days
❑ 50% Additional test time (Time and 1/2) over 2 days
❑ 100% Additional test time (Double time) over 2 days

❑ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

### STEP 2 CK:

**Additional Break Time**
☑ Additional break time over 2 days

**Additional Testing Time**
❑ 25% Additional test time (Time and 1/4) over 2 days
❑ 50% Additional test time (Time and 1/2) over 2 days
☑ 100% Additional test time (Double time) over 2 days

❑ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 2 days

### STEP 3:

**Additional Break Time**
❑ Additional break time over 4 days

**Additional Testing Time**
❑ 25% Additional test time (Time and 1/4) over 3 days
❑ 50% Additional test time (Time and 1/2) over 4 days
❑ 100% Additional test time (Double time) over 5 days

❑ Additional break time <u>and</u> 50% Additional test time (Time and 1/2) over 4 days

### STEP 2 CS:

Describe the accommodations you are requesting for each section of Step 2 CS (i.e., patient encounter,
patient note).  If you are requesting additional time, state the **amount** of additional time you require in
**minutes per encounter/note**.

❑ Patient Encounter: *I need my ASthma inhaler*
❑ Patient Note: *2 xTime  and use at Speach to Texet SoftwArc, and my gastritis med*

**USMLE® Request for Test Accommodations**

## Section D: Information About Your Impairment

**D1.** Check the box that best describes the **nature of your impairment** and list the **year** it was first diagnosed by a qualified professional.  Check only those for which you are requesting accommodations.

**Sensory**                                              **Year first diagnosed**
- ❑ Hearing                                              _____
- ❑ Vision                                               _____
- ❑ Other (specify):_____                      _____

**Learning**
- ☑ Reading                                              _____1990_____
- ☑ Writing                                              _____1990_____
- ❑ Mathematics                                          _____
- ❑ Other (specify):_____                      _____

**Language**
- ❑ Expressive                                           _____
- ❑ Receptive                                            _____
- ❑ Other (specify):_____                      _____

**Physical**
- ❑ Mobility/motor                                       _____
- ❑ Endocrine                                            _____
- ❑ Neurological                                         _____
- ❑ Other (specify):_____                      _____

**Psychiatric**
- ❑ Anxiety Disorder                                     _____
- ❑ Depression/Mood Disorder                             _____
- ☑ Attention Deficit/Hyperactivity Disorder             _____1990_____
- ❑ Other (specify):_____                      _____

**Other Impairment** (specify) _____           _____

**D2.** List your **current** DSM/ICD diagnosis/diagnoses for which you are requesting accommodations:

314.01  ADHD  with  partially  remediated  with  medication

315.0  Specific  learning  Disorder  With  impairment  in Reading

315.2  Specific  learning Disorder  With  impairment  in  Written/expression

**D3.   Personal Statement**

**Attach a signed and dated personal statement describing your impairments(s) and their impact on daily life.**  Narratives should **not** be confined to standardized test performance.  The personal statement is your opportunity to tell us how your physical or mental impairment(s) substantially limit your current functioning in a major life activity. In your own words, discuss how your impairment(s) would interfere with your access to the relevant USMLE Step and how the specific accommodation(s) you are requesting will alleviate this impact.

### Section E:  Accommodation History

#### STANDARDIZED EXAMINATIONS

**E1.**  List accommodations you received for all standardized examinations such as college, graduate and professional school admissions tests and professional licensure and certification examinations.  If no accommodations were provided, write NONE.

> **Attach copies of official documentation from each testing agency confirming the test accommodations they provided.**

> **Attached a copy of your official examination score report(s).**

|  | DATE(S) ADMINISTERED | ACCOMMODATION(S) PROVIDED |
|---|---|---|
| ❑ SAT®, ACT® | | |
| ❑ MCAT® | | |
| ❑ GRE® | | |
| ❑ GMAT® | | |
| ❑ LSAT® | | |
| ❑ DAT® | | |
| ❑ COMLEX® | | |
| ❑ Bar Examination(s) | | |
| ❑ Other(s) | | |

#### POSTSECONDARY EDUCATION

**E2.** List each school and all formal accommodations you receive/received, and the dates accommodations were provided:

> **Attach copies of official records from the school(s) listed confirming the accommodations they provided.**

| | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| **Medical/Graduate/ Professional School** | Ross School of Medicine | DT - 2 Time | 2009 |
| **Undergraduate School** | university of Texas at San Antonio | 2 x Time | |

#### E3.  Certification of Prior Test Accommodations

> If you receive/received accommodations in medical school and/or residency, the appropriate official at your medical school/residency must complete and submit the **Certification of Prior Test Accommodations** form available at www.usmle.org.

## PRIMARY AND SECONDARY SCHOOL

**E4.** List each school and all formal accommodations you received, and the dates accommodations were provided:

> **Attach copies of official records from the school(s) listed confirming the accommodations they provided.**

| | SCHOOL | ACCOMMODATIONS PROVIDED | DATES PROVIDED |
|---|---|---|---|
| **High School** | Alamo Highs High School | 2 X Time | 1998 |
| **Middle School** | Khoramd | 2 X Time | 1994 |
| **Elementary School** | pavanel | 2 X Time | 1991 |

## Section F:  Certification and Authorization

To the best of my knowledge and belief, the information recorded on this request form is true and accurate.  I understand that my request for accommodations, including this form and all supporting documentation, must be received by the NBME sufficiently in advance of my anticipated test date in order to provide adequate time to evaluate and process my request.

I acknowledge and agree that any information submitted by me or on my behalf may be used by the USMLE program for the following purposes:
- Evaluating my eligibility for accommodations.  When appropriate, my information may be disclosed to qualified independent reviewers for this purpose.
- Conducting research.  Any disclosure of my information by the USMLE program will not contain information that could be used to identify me individually; information that is presented in research publications will be reported only in the aggregate.

I authorize the National Board of Medical Examiners (NBME) to contact the entities identified in this request form, and the professionals identified in the documentation I am submitting in connection with it, to obtain further information.  I authorize such entities and professionals to provide NBME with all requested further information.

I further understand that the USMLE reserves the right to take action, as described in the Bulletin of Information (see "Indeterminate Scores and Irregular Behavior"), if it determines that false information or false statements have been presented on this request form or in connection with my request for test accommodations.

Name (print):  Sina Moghtader

Signature:  Sina Moghtader                    Date:  Feb 4/ 2016

**USMLE® Request for Test Accommodations**

## What to Submit
- ✓ Legible copies of all documents, not originals
- ✓ Typewritten and signed letters and reports from professionals on their letterhead
- ✓ Complete reports with all pages including test scores
- ✓ All documents in English. You are responsible for providing certified English translations of all non-English documentation
- ✓ Childhood records - if your request is based on a developmental disorder (e.g., LD, dyslexia, ADHD)
- ✓ Official transcripts and standardized test score reports
- ✓ Documentation beyond self-report of your functional impairment
- ✓ Documentation of your functional impairment in activities other than test-taking

## What NOT to Submit
- ✗ Original documents
- ✗ Handwritten or unsigned letters from physicians or evaluators
- ✗ Copies of reports with redactions or missing pages
- ✗ Multiple copies of documentation (i.e., faxed and mailed copies of a document)
- ✗ Duplicate documentation previously submitted to Disability Services
- ✗ Previous correspondence from Disability Services
- ✗ Research articles, your résumé or curriculum vita
- ✗ Staples, binders, page protectors, folders, or similar items

**Mail, fax or e-mail (as a pdf) your completed request form and supporting documents to the address below <u>at the same time</u> you submit your Step examination application.**

**Disability Services**
**National Board of Medical Examiners**
**3750 Market Street**
**Philadelphia, PA 19104-3190**
**Telephone: (215) 590-9700**
**Facsimile: (215) 590-9422**
**E-mail:** disabilityservices@nbme.org

# Exhibit 5



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

**Confidential**

May 16, 2016

1100587      0-805-749-9
denial, 2 CK, CS-Decision

**Via E-mail and USPS First Class**
Sina Moghtader
7911 Sierra Seco
San Antonio, TX 78240

RE: USMLE Step 2 CK and Step 2 CS          USMLE ID#: 0-805-749-9

Dear Mr. Moghtader:

We have thoroughly reviewed the documentation provided in support of your request for test accommodations for the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK) and Step 2 Clinical Skills (CS). We conducted an individualized review of your request in accordance with the guidelines set forth in the amended Americans with Disabilities Act (ADA).

You report the basis of your request to be a learning disorder in reading and written expression and Attention-Deficit/Hyperactivity Disorder (ADHD) diagnosed in 1990.  In your personal statement you write, *"I was diagnosed with ADHD and dyslexia in my country of origin, Iran, when I was 7 years old...Around the end of the second grade I began to be given extra time for my exams as an accommodation for my disabilities. A great improvement of my grade was noted by my teachers...In the fourth grade I began receiving ADHD medications. My grades improved so much that people actually started referring to me as smart...Any type of work that involved writing it has been very difficult for me. In addition, reading takes me much longer than my friends...With exams, having extra time for completion is crucial to me. Being able to read the question and understand and answer the question based on my knowledge, not my disability...As for the CS exam, having my asthma inhaler with me is [sic] great help because my gastric problem cause [sic] me to be more anxious and increases my anxiety, creating the increased risk of an asthma attack. I also need the speech-to-text software, as it has been very hard for me to spell from the top of my head. It takes much longer than for a non-disabled person, as I need more time to fix the sentences and to make them grammatically correct."*

In a February 2015 report of Neuropsychological Assessment conducted when you were a 32-year-old medical student, Melissa R. Bunner, Ph.D. writes that you were referred for evaluation in order to provide a second opinion about diagnoses and whether there was evidence of a need for accommodations for the licensing exam.  Your evaluator concludes, *"Both review of records as well as results of the current neuropsychological evaluation do continue to provide evidence of specific learning disorders. Both the patient report and records review indicated concerns with academics as well as formal diagnosis of ADHD when he was younger...Although English is not his first language,*

Sina Moghtader                                                                                      May 16, 2016

*he began learning English at a young age and both parents speak English. He showed evidence of intact verbal comprehension and expression on numerous evaluations and confirmed in this evaluation. In other words, he displays evidence of clear English proficiency, even when US normative data are used...He is currently prescribed medication that may be improving attention, but on formal testing he continued to show impairment. The disorder does appear to be partially remediated with medication, however, given behavioral ratings. For these reasons continued diagnosis of ADHD is considered appropriate because he does meet behavioral criteria for ADHD based on this evaluation, review of records, and behavioral observations."*

In a January 29, 2016 letter addressed to NBME, Scott W. Stuart, M.D., M.S. writes in support of your request for accommodations for Step 2 CS and Step 2 CK.  Dr. Stuart writes, *"Mr. Moghtader is a 32 y.o. male who has a long history of learning disability (specifically reading comprehension and written expression). He was raised in his native country of Iran until he left the country as a refugee due to religioius prosecution [sic] at the age of 13 y.o...He underwent a basic assessment in 2005 by Dr. Gaines demonstrating normal IQ and weakness in verbal based performance...The request for additional time for the MCAT was declined, he took the examination and passes. He was accepted to Ross Medical School and began his matriculation in 2008. He reports he failed his first semester given he did not have accommodations in place to address his challenges in reading comprehension and writing. He negotiated with the medical school to restart his medical training in 2009 with accommodations based upon psychological testing by Dr. Thompson completed in 2009 stating that he has a learning disability...In early 2011, Mr. Moghtader requested that he receive accommodations for more time to take the USMLE Step 1 from the NBME and the request was declined. He took his examination in March 2011 and passed...Given this man's history of receiving accommodations throughout much of his academic career and psycho-educational testing results that provide substantial verbally based weaknesses, I provide my strongest recommendation that reconsideration be provided to Sina Moghtader's request for accommodations that are in compliance with the ADA."*

An objective inquiry into the need for test accommodations for a specific learning disability requires a knowledge and understanding regarding the process of first and second language acquisition across the life span, the interaction between cognitive, linguistic, and academic development, particularly the manner in which the instructional language affects educational outcomes, and the very statistical foundations and assumptions that underlie the psychometric approach in testing. Theory and research on first and second language acquisition suggests that it takes at least 12 years for children to acquire their first language. Foundational language skills such as phonology, vocabulary, grammar, semantics, and pragmatics are generally acquired from birth through age five. However, the process of first language development is not complete by the time most children enter formal education. From age six to 12, children continue to develop in their first language the complex skills of reading and writing, as well as the more complex rules of morphology and syntax.

According to your documentation, you emigrated from Iran to the U.S. in 1986 when you were four years old after which you attended daycare and Kindergarten in San Antonio Texas where the instruction was in English. After this early exposure to English, you moved back to Iran in 1989 at age seven, leaving the U.S. educational system. At that time, your instructional language changed from English to some other language, presumably Farsi. You report that your parents were educated in England and the U.S. and spoke to you in English at home. Your documentation includes a reference to concerns about your academic performance in school around 1990 at which time you would have been about 8 years old. The concerns about your academic problems would have been perfectly natural given the fact that you had learned the English alphabet, had begun learning to

Sina Moghtader                                                                                    May 16, 2016

work with English letters and English sounds but were now expected to display age and grade level skills in a new instructional language. It is not surprising that you may have been observed to have educational difficulties in elementary school in Iran because you were being asked, albeit unfairly, to display 3rd grade skills in a language in which you had not previously received formal instruction. Thus, your reported history of academic problems is better explained by circumstance then to an intrinsic disability. The documentation describes the exact same scenario upon your returned to the U.S. after spending eleven months in Vienna Austria where you report learning English in special classes for refugees. Having had much more education in the language and culture of Iran, you entered the 10th grade in Texas where you were expected to master high school level content in English, a language different from that in which the vast majority of your academic instruction had occurred. Apparently, it was assumed that academic difficulties in high school represented a learning problem and you were identified as having a disability and given accommodations after attending ESL classes in 10th grade.

Given the significant changes and interruptions to your language of instruction, the moves from and to the U.S., and time spent in a refugee school, to expect you to have met the age or grade-expected standards for any grade you have been in during your lifetime is unfair. To expect that you could perform on all tasks in a manner comparable to native speakers of English or your native language would be similarly unreasonable and unfair.

Research suggests that students with average ability who are given instruction primarily in a language different than the one they learned at home only reach the 11th percentile range in reading by the time they reach 12th grade. The description of your difficulties in primary school in Iran and high school in the U.S., as well as the evaluation data collected since 2008, reflect the types of common manifestations one would expect to see in an individual with your language and educational history. Your records suggest that as a native English speaker, your formative years in the Iranian educational system made it difficult to acquire the symbolic aspects of language (reading and writing) versus the direct aspects (comprehending and speaking) in the language of instruction was well as in English. Nevertheless, your evaluators consistently point to one test score vs. another to support conclusions that are lacking any validity or which are presented as if obtained in a vacuum and devoid of the differential influence of maturation interacting with education. Most recently, Dr. Bunner illustrates this misunderstanding of the distinction between basic interpersonal communicative skills (BICS) and cognitive academic language proficiency (CALP) when she reports, *"The discrepancy between performance on oral language and written language performance in conjunction with past records and self-report provide significant evidence of learning disorders in reading and written expression that are separate for the concern about English proficiency (since oral proficiency is excellent)."* BICS refers to conversational fluency in a language while CALP refers to students' ability to understand and express, in both oral and written modes, concepts and ideas that are relevant to success in school. [1] The reader is referred to the work of Jim Cummins in describing the timelines and challenges that second language learners encounter as they attempt to catch up to their peers in academic aspects of the school language.

The ADA defines disability as a physical or mental impairment that substantially limits one or more major life activities. Accommodations are intended to provide access to the USMLE testing program for individuals with a documented disability as defined by the ADA. A diagnostic label, in and of itself, does not establish coverage under the ADA, nor does prior receipt of accommodations for a particular activity guarantee that identical accommodations are indicated or will be available in all future settings and circumstances. The ADA covers individuals who are substantially limited in a

3

Sina Moghtader                                                                    May 16, 2016

major life activity. Determination of whether an individual is substantially limited in functioning as compared to most people is based on assessment of the current impact of the identified impairment.

Your documentation does not demonstrate a substantial limitation in a major life activity as compared to most people or that the requested accommodations are an appropriate modification of your USMLE Step 2 CK and Step 2 CS test administration. Therefore, after a thorough review of all of your documentation, I must inform you that we are unable to provide you with the requested accommodations. Please refer to the USMLE web page at www.usmle.org/test-accommodations/PIEs.html regarding the use of personal items, include an asthma inhaler, during the Step 2 CS exam.

On May 11, 2016, we received a letter via e-mail from your attorney, Mary J. Goodwin, with letters of support from Christopher Sollars, Russel Thompson, Ph.D., and Mellisa R. Bunner, Ph.D. Mr. Sollars states that he was a teacher at your high school and although you were not his student, he was aware of your challenges. Dr. Thompson refers to the assessment he conducted in April 2008 as well as a rebuttal letter he wrote at your request in 2011. Dr. Bunner refers to an evaluation she conducted in February 2015 which she reviewed at the request of your attorney. These additional documents provide no new substantive information or evidence that alters our decision.

Your Step 2 CK and Step 2 CS exam scheduling permits have been released. You may inquire at permits@ecfmg.org or call Applicant Information Services at (215) 386-5900 with any questions about your scheduling permit.

Sincerely,

Catherine Farmer

Catherine Farmer, Psy.D.
Director, Disability Services
ADA Compliance Officer, Testing Programs

C: Mary J. Goodwin, Esq.

[1] Street, B. & Hornberger, N. H. (Eds.). (2008). *Encyclopedia of Language and Education, 2nd Edition, Volume 2: Literacy.* (pp. 71-83). New York: Springer Science + Business Media LLC.